■ DIANE L. ATKINS et al., Appellants, v EXXON MOBIL CORPORATION, Formerly Known as EXXON CORPORATION, Formerly Known as MOBIL CORPORATION, EXXON MOBIL CORPORATION, et al., Respondents. [780 NYS2d 666]—

Spain, J. Appeal from an order of the Supreme Court (Kavanagh, J.), entered February 6, 2003 in Sullivan County, which, inter alia, granted defendants' motions for summary judgment dismissing the complaint.

Plaintiffs, current or past property owners and/or residents of the Village of Liberty, Sullivan County, have brought this action claiming various injuries arising from the contamination of the village water supply. The contamination was discovered in December 1992, when an engineering firm hired by the Village determined that a water sample taken in 1990 from one of the

wells in the village system tested positive for the presence of methyl tertiary-butyl ether (hereinafter MTBE), a gasoline additive. Another sample taken in December 1992 contained a concentration of MTBE three times higher than that allowed by drinking water standards established by the Department of Health (hereinafter DOH). In response, in January 1993, the Village published a legal notice and DOH published a fact sheet. Extensive local media coverage addressed the contamination and the steps taken to remove the toxin from the water supply and to switch to alternate sources of safe water.

In October 2000, at a public meeting, DOH distributed a comprehensive public health assessment report, which advised the public (including plaintiffs)—for the first time—that long-term exposure to MTBE-contaminated water "may be associated with a minimal risk for noncarcinogenic effects and a low risk for carcinogenic health effects." Shortly after the release of those findings, plaintiffs commenced this action seeking damages for, among other things, diminished real estate values, medical monitoring, negligent infliction of emotional distress and fear of future injury. Defendants moved to dismiss the complaint based upon, among other things, the statute of limitations, and plaintiffs cross-moved to amend both their complaint and their notice of claim. Supreme Court advised the parties that it was treating defendants' motions as motions for summary judgment and thereafter granted defendants' motions and dismissed the complaint in its entirety, finding that plaintiffs' claims were barred by the statute of limitations and, alternatively, that plaintiffs' claims for emotional distress and fear of future injury were not supported by circumstances providing a guarantee of their genuineness. Plaintiffs now appeal.

Initially, we agree with Supreme Court's conclusion that plaintiffs have not presented evidence in admissible form to raise triable issues of fact regarding their entitlement to recover damages for emotional distress and fear of future injury. Though given ample opportunity, plaintiffs have failed to supply any evidence of physical harm sufficient to guarantee the genuineness of their claims (*see DiStefano v Nabisco, Inc.*, 2 AD3d 484, 485 [2003]; *Iannotti v City of Amsterdam*, 225 AD2d 990, 990-991 [1996]). Nor have they demonstrated the presence of MTBE in the body of any of the plaintiffs or other evidence of the presence of a toxin-induced disease causally related to such exposure (*see e.g. DiStefano v Nabisco, Inc., supra* at 485). Accordingly, Supreme Court properly dismissed such claims on the merits.

However, we find that plaintiffs raised material questions of

fact as to the date of their discovery of the injury to their property and, thus, reverse that part of Supreme Court's order which dismissed their property damage causes of action. CPLR 214-c (2) provides for a three-year limitations period for latent injuries to person or property caused by exposure to harmful substances beginning on the date the injury is discovered or the date when the injury should have been discovered by a reasonably diligent plaintiff, whichever is earlier (*see Jensen v General Elec. Co.*, 82 NY2d 77 [1993]). It has been observed that "discovery occurs when, *based upon an objective level of awareness of the dangers and consequences of the particular substance,* 'the injured party discovers the primary condition on which the claim is based' " (*MRI Broadway Rental v United States Min. Prods. Co.*, 92 NY2d 421, 429 [1998] [emphasis added], quoting *Matter of New York County DES Litig.*, 89 NY2d 506, 509 [1997]; *see Rothstein v Tennessee Gas Pipeline Co.*, 87 NY2d 90 [1995]). Contrary to defendants' claims, we find that plaintiffs' submissions raised triable issues of fact as to when their awareness of the dangers and consequences of MTBE exposure or contamination occurred or should have occurred, and, indeed, of the scientific and public awareness of such dangers, so as to overcome defendants' prima facie showing.

Plaintiffs' proof demonstrated that, in early 1993, they were merely apprised of the presence of MTBE in one of the village wells which exceeded state standards. However, at that time DOH and village officials advised the public that the levels of contamination detected in their water did not present "an imminent health hazard," and represented that their water was "safe to drink" and "not deemed hazardous to people's health." The public also was informed that "[d]ata on the health effects of exposure to MTBE are limited" and that, while exposure to high levels of MTBE affect major organs and body systems in laboratory animals, "[t]he health affects from long-term exposure to low levels of MTBE are *unknown*" [emphasis added]. A research scientist for DOH characterized the levels as "an extremely low level of contamination" and described MTBE as "a chemical which does not have a high level of toxicity." A newspaper report quoted officials as stating that MTBE is "a non-toxic chemical." Not until the October 2000 release of the DOH public health assessment report was DOH's assessment of potential carcinogenic and noncarcinogenic consequences of long-term exposure to the MTBE levels—such as those found in this well—revealed and, also for the first time, the fact that plaintiffs' water supply had also been contaminated with low levels of benzene. That report indicates that prior to 1990, the water supply was not monitored for MTBE and the developing

scientific data and toxological information used in the assessment had caused DOH to revise its drinking water standards to require lower concentrations of MTBE. It reflects, at the very least, that the scientific knowledge and awareness of the dangers and consequences of long-term exposure to MTBE were in progress through the 1990s and, indeed, were not known with any certainty in 2000.

As such, we find that plaintiffs presented proof that the dangers posed by long-term exposure to these levels of contamination and the consequential injury to their property may not have been known until October 2000 or later, creating a question of fact as to whether they could or should have discovered it earlier (*see Grossjahann v Geo. B. Wilkins & Sons*, 244 AD2d 808, 810 [1997]; *see also Thoma v Town of Schodack*, 6 AD3d 957, 959-960 [2004]; *cf. MRI Broadway Rental v United States Min. Prods. Co., supra* at 425, 429; *Jensen v General Elec. Co., supra* at 82, 89). This scenario is distinguishable from *Oliver Chevrolet v Mobil Oil Corp.* (249 AD2d 793 [1998]), which involved known gasoline contamination of the plaintiffs' property, which progressed and eventually affected their water, and which the plaintiffs failed to investigate. In our view, plaintiffs cannot fairly or objectively be charged with knowledge of the dangers and consequences of this MTBE contamination in 1993, i.e., the condition which allegedly impacted their property values. Moreover, no evidence exists that plaintiffs had any knowledge of the benzene contamination prior to 2000 and, thus, to any damage to their property resulting therefrom. Also, there is support in the record for plaintiffs' claim that their failure to investigate was the result of their reliance on DOH and village representations (*cf. Oliver Chevrolet v Mobil Oil Corp., supra* at 794). Under these circumstances, a jury could reasonably find in favor of plaintiffs on the question of whether, through the exercise of reasonable diligence, they could or should have discovered the injury to their property more than three years prior to their commencement of this action (*see Grossjahann v Geo. B. Wilkins & Sons, supra* at 810; *Bimbo v Chromalloy Am. Corp.*, 226 AD2d 812, 815 [1996]).

As a result of our determination, plaintiffs' cross motion to amend their complaint and notice of claim needs to be decided by Supreme Court.

Cardona, P.J., Crew III, and Peters, JJ., concur; Mugglin, J., not taking part. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted defendants' motions dismissing plaintiffs' property damage causes of action; motions denied to that extent; and, as so modified, affirmed.